Kathleen S. MOLLOY, Plaintiff,

v.

PRIMUS AUTOMOTIVE FINANCIAL SERVICES, Defendant.

No. CV 99–7847 AHM(RNBx).

United States District Court, C.D. California, Los Angeles Division.

March 30, 2000.

Ronald Goldser of Zimmerman Reed, P.L.L.P., Minneapolis MN, for Plaintiff.

Scott Hyman of Severson & Werson, San Francisco, CA, for Defendant.

ORDER GRANTING PLAINTIFF'S MOTION TO REFER BANKRUPTCY MATTERS TO UNITED STATES BANKRUPTCY COURT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

MATZ, District Judge.

This case is before the Court on the motion of plaintiff Kathleen Molloy ("Molloy") to "refer bankruptcy matters to United States Bankruptcy Court" and the motion of defendant Primus Automotive Financial Services ("Primus") to dismiss pursuant to F.R.Civ.P. 12(b)(6). On the major issues, the Court concludes that (1) referral of plaintiff's "core" bankruptcy claims is appropriate; (2) a private right of action exists under 11 U.S.C. § 524; and (3) plaintiff's complaint fails to state a

claim for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). For these reasons, and as set forth more fully below, the Court grants plaintiff's motion to refer to the Bankruptcy Court and grants defendant's motion to dismiss, but only in part.

## CLAIMS AND FACTUAL ALLEGATIONS

All of plaintiff's claims stem from Primus' alleged attempts to collect debts ostensibly owed by plaintiff on an automobile lease after plaintiff filed for Chapter 7 bankruptcy. Plaintiff's complaint contains a total of ten (10) counts. Four of the claims allege violations of the United States Bankruptcy Code ("the Code") 11 U.S.C. §§ 524(a), 524(c) and 362. Plaintiff also alleges claims for violations of RICO, 18 U.S.C. § 1962(c), and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. Plaintiff seeks compensatory and punitive damages, attorney's fees, declaratory relief, an accounting and an injunction prohibiting defendant from engaging in further violations of the Code and the FDCPA.[1]

Plaintiff contends that Primus' debt collection activities violated two injunctions resulting from 11 U.S.C. §§ 362 and 524. Upon the filing of a Chapter 7 bankruptcy petition, § 362 ( the "automatic stay") automatically enjoins attempts to collect prepetition debts during the bankruptcy proceedings. Following the discharge of the bankruptcy, § 524 permanently enjoins creditors from attempting to collect discharged debts. Prior to a discharge, however, a creditor and a bankrupt debtor may enter into a reaffirmation agreement pursuant to which they may voluntarily agree to the payment by the debtor of some part of the dischargeable debt.

1. Molloy's claims are virtually identical to those in *Ramirez v. General Motors Acceptance Corp.*, CV 99–7846 AHM (RNBx). Both cases arise out of the defendants' alleged unlawful attempts to collect purported debts owed by

the plaintiffs after plaintiffs filed for Chapter 7 bankruptcy. The attorneys are the same in both cases and both parties in the *Ramirez* case brought motions substantially identical to these.

The relevant allegations in the Complaint are as follows:

- On February 26, 1996, plaintiff entered into a 36–month lease (the "Debt") with Primus for a 1996 Mazda 626 automobile. Under the lease terms, plaintiff was required to pay, and for several months did make, monthly payments to Primus in the amount of $278.04. Complaint ¶ 9.[2]

- On September 11, 1997, plaintiff filed a Chapter 7 petition with the Bankruptcy Court for the Central District of California. The Debt was listed on Schedule G. *Id.* at ¶¶ 8–9.

- "Upon information and belief," on or before October 14, 1997, Primus received notice of the Chapter 7 petition. *Id.* at ¶ 9.

- On October 14, 1997, a creditor's meeting was held which Primus did not attend. *Id.* at ¶ 10.

- On December 22, 1997, the Bankruptcy Court discharged plaintiff's bankruptcy. *Id.* at ¶ 13.

- Both during the bankruptcy proceedings and after the discharge, Primus continued its collection activities by sending through the U.S. mail monthly collection statements, payment default notices and account notices. Primus also contacted plaintiff by telephone attempting to collect the alleged debts. Primus did these things without obtaining an order lifting the automatic stay. *Id.* at ¶ 15.

- Defendant never sought to obtain plaintiff's consent to a reaffirmation agreement and never informed plaintiff that she was not liable for her pre-petition debts after the discharge. *Id.* at ¶¶ 12, 14.

- Due to Primus' collection efforts, plaintiff made payments of $746.38 and $100 to Primus in February and

March 1999 respectively. *Id.* at ¶ 16.

## DISCUSSION

### I. Plaintiff's Motion to Refer Bankruptcy Matters

Plaintiff asks the Court to refer all bankruptcy issues in this case to the United States Bankruptcy Court for the Central District of California. Specifically, plaintiff seeks to have the Bankruptcy Court resolve the following six issues:

a. Whether defendant's collection activities violated the automatic stay provision of § 362;

b. Whether defendant's collection activities violated § 524(a)(2) of the Code and the related bankruptcy discharge;

c. Whether defendant's failure to take reasonable steps to reaffirm pre-petition debt was a deliberate circumvention of § 524(c) of the Code;

d. Whether defendant's actions constitute civil contempt for violations of the automatic stay under § 362 and § 524(a)(2) of the Code and the related bankruptcy discharge;

e. Whether defendant violated any other provisions of the Code;

f. Whether defendant is liable to plaintiffs for any damages, sanctions, and costs associated with violations of the Code and the amount of such liability?

Plaintiff requests that the Court retain the RICO and FDCPA claims as well as the issue of class certification and decide these claims after the Bankruptcy Court rules on the six bankruptcy issues listed above. Plaintiff argues that because the Bankruptcy Court should decide the bankruptcy issues raised in her claims, those portions of defendant's motion to dismiss concerning her Bankruptcy Code claims should be heard by the Bankruptcy Court. Further-

---

**2.** Although not alleged in the Complaint, plaintiff's RICO statement asserts that defendant assigns its lease receivables to Ford Motor Credit Company ("Ford") and then acts as Ford's collection agent and loan servicer. RICO Statement at 5.

more, she argues, this Court should stay defendant's motion to dismiss on the RICO and FDCPA claims until the Bankruptcy Court rules on the bankruptcy issues.

Primus implicitly agrees that the six issues described above are all core bankruptcy issues under 28 U.S.C. § 157(b)(2) and does not challenge this Court's authority to refer them to the Bankruptcy Court under 28 U.S.C. § 157(a). That subsection provides:

> Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.[3]

The six issues that plaintiff seeks to have the Bankruptcy Court resolve clearly arise under Title 11 and thus could be referred under § 157(a). However, Primus argues that a referral would violate its Seventh Amendment right to a trial by jury on the RICO and FDCPA claims.[4] Although in her motion papers plaintiff failed to demonstrate a right to referral, this Court nevertheless concludes that referral is appropriate given the particular posture of this case.

It is undisputed that Primus has the right to a trial by jury on plaintiff's RICO and FDCPA claims. Primus asserts that a major issue in the litigation of these claims as well as the bankruptcy claims will be whether it ever received notice of plaintiff's bankruptcy. The parties agree that referral of the bankruptcy claims will require the Bankruptcy Court to make that very factual determination. Primus argues that if the Bankruptcy Court finds that it did have knowledge of plaintiff's bankruptcy, it would be collaterally estopped from raising this argument in the trial of plaintiff's RICO and FDCPA claims, thus depriving Primus of its right to have a jury resolve a key issue of fact.[5]

Plaintiff relies heavily on an Order recently issued by Judge Dickran Tevrizian of this District granting a motion of class action plaintiffs for referral substantially similar to plaintiff's motion in this case. *See Michael J.B. Henry, et al. v. Associates Home Equity Services, Inc.,* CV 99–4143 DT(AIJx), July 12, 1999 Order Granting Plaintiffs' Motion to Refer Bankruptcy Matters to United States Bankruptcy Court. In that Order, Judge Tevrizian rejected the defendant's argument that referral of the plaintiffs' "core" bankruptcy claims would violate the defendant's right to a trial by jury on the plaintiffs' RICO and FDCPA claims:

> Defendant contends that its right to a jury trial on the non-core matters will be precluded by referral. This Court disagrees. It is true that as to non-core issues such as Plaintiffs' RICO and FDCPA claims, ordinarily the bankruptcy court could only conduct a jury trial "if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 28 U.S.C. § 157. Defendant in-

---

3. Central District General Order No. 266 adopts the Orders of the Chief Judge filed on July 23 and August 6, 1984 which refer to the bankruptcy judges of this district, "all cases under Title 11 and all proceedings under Title 11 or arising in or related to a case under Title 11 pursuant to 28 U.S.C. § 157(a) ... [and] all cases and matters and proceedings in cases under the Bankruptcy Act ... pending before this court ..."

4. Primus also argues that allowing plaintiff's bankruptcy claims to be heard by the Bankruptcy Court before class certification would violate F.R.Civ.P. 23's prohibition against "one-way intervention" because the putative class members could wait until the Bankrupt-

cy Court's decision before deciding whether to join as class action plaintiffs. According to Primus, this would result in a violation of its due process rights. Plaintiff responds that certification issues can be decided before the Bankruptcy Court rules on the bankruptcy issues, thus eliminating any possible intervention problem. In this Order, the Court need not resolve this issue.

5. Primus further argues that even if the doctrine of collateral estoppel is inapplicable, referral would result in the issue of Primus' knowledge being tried twice—before the Bankruptcy Court and before this Court—thereby causing administrative inefficiency.

sists that it will not give such consent. But, again, these RICO and FDCPA claims will not be before the Bankruptcy Court.

Order at 16.[6]

Judge Tevrizian's order in *Henry* cannot dispose of the issue here because the defendant in that case, unlike the defendant here, did not contend that the core and non-core claims would necessarily require a determination of the same factual issues. Nor did the defendant make the collateral estoppel argument raised by Primus in this case.[7] Defendant merely argued that referral would violate its right to a jury trial and Judge Tevrizian merely opined that "this argument does not preclude referral of the aforementioned core bankruptcy issues." *Id.*

In their memoranda of points and authorities before this Court, both sides provided virtually no analysis of the doctrine of collateral estoppel. Indeed, plaintiff fails to even address Primus' assertion that because the question of its knowledge of plaintiff's bankruptcy will be a critical factual issue for both the core and non-core claims, the Bankruptcy Court's determination would collaterally estop Primus from re-litigating the issue before a jury on the RICO and FDCPA claims. Rather, in her reply brief, plaintiff merely cites the above-quoted passage from Judge Tevrizian's Order and asserts in conclusory fashion that "Defendant will not be deprived of its right to a jury trial on issues triable by a jury." Reply at 3.

The collateral estoppel doctrine provides that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party (or privy) to the prior litigation." 18 Moore's Federal Practice § 132.01[1] (1999). "The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts." *Katchen v.*

*Landy,* 382 U.S. 323, 334, 86 S.Ct. 467, 475, 15 L.Ed.2d 391 (1966); *see Monarch Life Insurance Co. v. Ropes & Gray,* 65 F.3d 973 (1st Cir.1995) (where plaintiff did not appeal from bankruptcy court injunction, plaintiff was collaterally estopped from litigating issue whether injunction exceeded court's jurisdiction); *Turshen v. Chapman,* 823 F.2d 836 (4th Cir.1987) (bankruptcy court's determination that trustee did not breach his fiduciary duty precluded subsequent relitigation of same issue in district court).

The factual issue of whether Primus received notice of plaintiff's bankruptcy will be a critical and essential factor in the resolution of both the core and non-core claims in this case. Under the authorities cited above, the bankruptcy court's determination of this issue would collaterally estop Primus from relitigating the issue in this Court. The question is therefore whether this collateral estoppel would violate Primus' right to a jury trial on the non-core FDCPA and RICO claims.

At the March 6, 2000 hearing on this motion, plaintiff argued that even if the Bankruptcy Court's factual determinations would have collateral estoppel effect on her non-core claims, this would not be a violation of Primus' Seventh Amendment rights. As support for this assertion, plaintiff cited *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) and *Katchen v. Landy, supra.* However, the appropriate starting point for this analysis is *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

The plaintiff in *Beacon Theatres* operated movie theaters and contracted with movie distributors for the exclusive right to show "first run" pictures. Beacon Theatres, a competitor of the plaintiff, notified the plaintiff that it considered the contracts to be in violation of antitrust laws. The plaintiff filed suit seeking both a de-

---

**6.** Although Judge Tevrizian did not specify the precise provision in § 157 that he quoted, it is subsection (e).

**7.** This Court reviewed the briefs in the case before Judge Tevrizian.

claratory judgment that its contracts did not violate the antitrust laws and an injunction to prevent Beacon Theatres from filing an antitrust action. Beacon Theatres counterclaimed against the plaintiff for antitrust violations and demanded a jury trial on the factual issues. The district court determined that the issues raised in the plaintiff's complaint were equitable in nature and that they should be tried to the court before a jury trial was conducted on Beacon Theatres' counterclaims. The Supreme Court held that this decision was improper:

> [T]he effect of the action of the District Court could be, as the Court of Appeals believed, "to limit the petitioner's opportunity fully to try to a jury every issue which has a bearing upon its treble damage suit," for determination of the issue of clearances by the judge might "operate either by way of res judicata or collateral estoppel so as to conclude both parties with respect thereto at the subsequent trial of the treble damage claim" ... If there should be cases where the availability of declaratory judgment or joinder in one suit of legal and equitable causes would not in all respects protect the plaintiff seeking equitable relief from irreparable harm while affording a jury trial in the legal cause, the trial court will necessarily have to use its discretion in deciding whether the legal or equitable cause should be tried first. Since the right to jury trial is a constitutional one, however, while no similar requirement protects trials by the court, that discretion is very narrowly limited and must, wherever possible, be exercised to preserve jury trial. As this Court said in *Scott v. Neely,* 140 U.S. 106, 109–110, 11 S.Ct. 712, 714, 35 L.Ed. 358: "In the Federal courts this (jury) right cannot be dispensed with, except by the assent of the parties entitled to it; nor can it be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action, or during its pendency." This long-standing principle of equity dictates

that only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims. As we have shown, this is far from being such a case.

*Id.* at 504–511, 79 S.Ct. at 953–957 (internal citations omitted). Three years later, the Supreme Court reaffirmed these principles in *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), holding that the plaintiff was entitled to a jury trial on the factual issues underlying its claim for breach of contract even though those factual issues also provided the basis for the plaintiff's request for injunctive relief.

In *Katchen, supra,* a creditor of a bankrupt corporation filed claims in the Bankruptcy Court against the bankruptcy estate. The trustee counterclaimed, arguing that the creditor's payments on behalf of the corporation constituted voidable personal preferences. The Bankruptcy Court agreed with the trustee and declared that the preferences were voidable. The Supreme Court affirmed and held that the Bankruptcy Court's summary jurisdiction over the claim did not violate the creditor's Seventh Amendment rights:

> [A]lthough [the creditor] might be entitled to a jury trial on the issue of preference if he presented no claim in the bankruptcy proceeding and awaited a federal plenary action by the trustee, when the same issue arises as part of the process of allowance and disallowance of claims, it is triable in equity.

*Katchen,* 382 U.S. at 336, 86 S.Ct. at 476. The Court rejected the argument that the "equitable doctrine" set forth in *Beacon Theatres* required a different outcome:

> In neither *Beacon Theatres* nor *Dairy Queen* was there involved a specific statutory scheme contemplating the prompt trial of a disputed claim without the intervention of a jury ... Both *Beacon Theatres* and *Dairy Queen* recognize

812

that there might be situations in which the Court could proceed to resolve the equitable claim first even though the results might be dispositive of the issues involved in the legal claim.

*Id.* at 339–340, 86 S.Ct. at 478.

Subsequently, in *Parklane Hosiery, supra,* the Supreme Court relied on *Katchen* in holding that a plaintiff may use offensive collateral estoppel in a legal proceeding based on a prior equitable determination that the defendants issued a false and misleading proxy statement without violating the defendants' Seventh Amendment right to a jury trial on the legal claims:

> Both the premise of *Beacon Theatres,* and the fact that it enunciated no more than a general prudential rule were confirmed by this Court's decision in [*Katchen*]. In that case the Court held that a bankruptcy court, sitting as a statutory court of equity, is empowered to adjudicate equitable claims prior to legal claims, even though the factual issues decided in the equity action would have been triable by a jury under the Seventh Amendment if the legal claims had been adjudicated first ... Thus the Court in *Katchen* [ ] recognized that an equitable determination can have collateral-estoppel effect in a subsequent legal action and that this estoppel does not violate the Seventh Amendment.

*Parklane Hosiery,* 439 U.S. at 334–335, 99 S.Ct. at 653.

In *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the trustee of a bankrupt corporation sued two Colombian business entities to recover payments made to them by the bankrupt's corporate predecessor, on the theory that the payments were fraudulent transfers. The Bankruptcy Court denied the defendants' request for a jury trial and, following a bench trial, awarded the trustee damages. The Supreme Court reversed, concluding that the defendants had a right to a jury trial on the trustee's claim and that *Katchen* did not permit the Bankruptcy Court to adjudicate the trustee's claims without a jury:

> We read ... *Katchen* as holding that, under the Seventh Amendment, a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate, not upon Congress' precise definition of the "bankruptcy estate" or upon whether Congress chanced to deny jury trials to creditors who have not filed claims and who are sued by a trustee to recover an alleged preference. Because [the defendants] here ... have not filed claims against the estate, [the trustee's] fraudulent conveyance action does not arise "as part of the process of allowance and disallowance of claims." Nor is that action integral to the restructuring of debtor-creditor relations. Congress therefore cannot divest [the defendants] of their Seventh Amendment right to a trial by jury. *Katchen* thus supports the result we reach today; it certainly does not compel its opposite.

*Id.* at 58–59, 109 S.Ct. at 2799.

Finally, in *Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), the Supreme Court held that depositors who submitted claims against debtors' bankruptcy estates had no Seventh Amendment right to a jury trial when thereafter they were sued by the bankruptcy trustee for recovery of pre-filing payments to them alleged to be preferences. In so holding, the Court relied heavily on *Katchen.*

■ The shifting pronouncements of the Supreme Court render the issue raised by Primus of whether its right to a jury trial precludes referral of plaintiff's core claims to the Bankruptcy Court more complicated than either side acknowledged in its briefs and at oral argument. This Court's analysis begins with *Beacon Theatres'* "prudential rule" that only under the "most imperative circumstances" should the right to a jury trial of legal issues be foreclosed by a prior determination of equitable issues. However, since in both *Katchen* and *Parklane Hosiery* the Supreme Court at least

implicitly found such circumstances, the ultimate question is to what extent the principles of those cases require or support referral in this case.

The Court concludes that, given the particular facts of this case, referral is appropriate. Underlying the decision in *Katchen* was the Supreme Court's concern that the right to a jury trial not frustrate the statutory bankruptcy scheme crafted by Congress:

> [The creditor's] argument would require that in every case where a § 57, sub. g [the subsection that forbids a creditor from collecting from the bankrupt on a voidable preference] objection is interposed and a jury trial is demanded the proceedings on allowance of claims must be suspended and a plenary suit initiated, with all the delay and expense that course would entail. Such a result is not consistent with the equitable purposes of the Bankruptcy Act nor with the rule of *Beacon Theatres* and *Dairy Queen*, which is itself an equitable doctrine . . . We think Congress intended the trustee's § 57, sub. g objection to be summarily determined; and to say that because the trustee could bring an independent suit against the creditor to recover his voidable preference, he is not entitled to have his statutory objection to the claim tried in the bankruptcy court in the normal manner *is to dismember a scheme which Congress has proscribed . . . [T]o implement congressional intent, we think it essential to hold that the bankruptcy court may summarily adjudicate the § 57 sub. g objection . . .*

*Katchen*, 382 U.S. at 339–340, 86 S.Ct. at 478 (emphasis added, internal citations omitted). That concern is applicable here. True, this case is in a different procedural posture than *Katchen:* because plaintiff was already discharged from her bankruptcy, there is no ongoing bankruptcy proceeding that would have to be suspended if this Court adjudicated all the claims (a)—(f) listed above on page four of this Order. But plaintiff's claims fundamentally implicate the integrity of her bankrupt-

cy proceeding. From a practical or financial point of view, defendant here is in the same functional posture as the creditors in *Katchen* and *Langenkamp,* in the sense that defendant received payments to the detriment of the debtor or other creditors. If plaintiff proves her allegations, then defendant will be found to have undermined the very protections that the Bankruptcy Court is designed to, and attempted to, afford to plaintiff. In that respect, then, to allow the Bankruptcy Court to determine the validity of those allegations would "implement"— or at the very least support— what *Katchen* described as "congressional intent." Stated another way, to permit defendant to benefit from a literal application of *Katchen* and *Langenkamp,* one that would confine those holdings only to cases already pending in Bankruptcy Court, would in effect reward defendant for its allegedly wrongful disregard and avoidance of plaintiff's bankruptcy. Accordingly, the Court grants plaintiff's motion to refer.

## II. Defendant's Motion to Dismiss

Although the Court grants plaintiff's motion to refer, the Court declines to adopt plaintiff's suggestion that the RICO issues raised in defendant's motion to dismiss be stayed and that the bankruptcy issues be decided by the Bankruptcy Court. In the interests of efficiency and judicial economy, the Court will decide the issues raised in defendant's motion.

### A. Legal Standards

On a motion to dismiss pursuant to F.R.Civ.P. 12(b)(6) for failure to state a claim, the allegations of the complaint must be accepted as true and are to be construed in the light most favorable to the nonmoving party. *Wyler Summit Partnership v. Turner Broadcasting System, Inc.,* 135 F.3d 658, 661 (9th Cir.1998). "[A] complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* Where a motion to dismiss

is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir.1996).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.... However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994) (*citing Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n. 3 (1st Cir.1991)).

Defendant moves to dismiss all of plaintiff's claims pursuant to F.R.Civ.P. 12(b)(6) on several grounds. Defendant's contentions fall within four broad categories: 1) the complaint inadequately asserts that defendant had notice of plaintiff's bankruptcy; 2) there is no private right of action under 11 U.S.C. § 524; 3) plaintiff fails to state a claim under the FDCPA; and 4) plaintiff fails to state a claim under RICO.

## B. Notice of Plaintiff's Bankruptcy

### 1. Bankruptcy Code and FDCPA Claims

▇▇▇ Plaintiff's complaint states that "[u]pon information and belief, Defendant received notice of Plaintiff's Bankruptcy on or before October 14, 1997." Complaint ¶ 9. Defendant presents evidence that it never received notice of plaintiff's bank-

ruptcy. Specifically, Primus points to the fact that it was not included in the Master Mailing List, the Notice of Creditor Meeting or the Court's Creditor Listing.[8] Defendant's Request for Judicial Notice, Exs. 1, 2, 3.

However a motion to dismiss may be granted only where plaintiff can prove no set of facts that would entitle her to relief. It is possible that Primus could have received notice of the bankruptcy through means other than the documents to which it cites. Indeed, plaintiff's opposition states that "plaintiff herself gave notice of her bankruptcy to Defendant." Opposition at 6. Whether Primus had notice of plaintiff's bankruptcy is a hotly contested issue; however, it is not appropriate grounds for dismissal under Rule 12(b)(6).

▇▇▇ Primus also argues that plaintiff improperly pleads Primus' notice "upon information and belief." Primus asserts that "information and belief" pleadings are inappropriate "where the facts are or should be known to plaintiff." Memorandum at 5. Arguing that whether plaintiff gave Primus notice of the bankruptcy is "uniquely within [her] knowledge," Primus asserts that a pleading on information and belief is insufficient. Reply at 3.

Primus' argument is not persuasive. The complaint alleges that Primus *received* notice. While plaintiff would know if she sent notice of her bankruptcy to Primus—for example, in a letter—one could not be certain that Primus actually received such notice unless further discovery were conducted or Primus admitted to actually receiving the letter. Therefore, whether Primus received the notice is not necessarily a matter "uniquely within the knowledge of plaintiff."

8. Generally, the Court may not consider materials outside the pleadings in ruling on a motion to dismiss under Rule 12(b)(6). However, the Court may take judicial notice of matters of public record outside the pleadings. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986). Defendant asserts that the Court may take judicial notice of these three documents from plaintiff's bankruptcy file. Memorandum at 1. Even assuming this is so, defendant's argument still fails because it is possible that Primus received notice of the bankruptcy through another source.

## 2. RICO claim

Primus also asserts that (1) pleading it received notice on information and belief is inadequate with respect to plaintiff's RICO claim and (2) because Primus had no notice of plaintiff's bankruptcy, plaintiff lacks standing to assert a RICO claim.

F.R.Civ.P. 9(b) provides that:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Rule 9(b) applies to RICO fraud allegations. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) ("Rule 9(b) requires that the pleader state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.").

■ Primus does not challenge the sufficiency of plaintiff's RICO allegations concerning any of the factors enumerated in *Moore*. Rather, Primus argues only that the allegation concerning its notice of the bankruptcy lacks the requisite specificity under Rule 9(b). This argument ignores the Rule's second sentence. Whether Primus had notice of the bankruptcy goes to the issue of its intent to commit mail fraud and wire fraud, the predicate RICO acts alleged by plaintiff. Under Rule 9(b), Primus' fraudulent intent may be averred "simply by saying that scienter existed." *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1547 (9th Cir.1994).[9] Plaintiff's complaint adequately pleads defendant's intent to engage in fraudulent activity.

Primus similarly argues that Molloy lacks standing to assert a RICO violation because Primus did not have notice of her bankruptcy and thus it could not have committed the alleged predicate acts of mail and wire fraud. This claimed defect does not appear to give rise to a standing issue but, in any event, whether Primus had notice of Molloy's bankruptcy is an issue of fact not subject to resolution on a motion to dismiss.

## C. Private Cause of Action for 11 U.S.C. § 524 [10]

■ Plaintiff's first and third causes of action plead violations of the Bankruptcy Code, 11 U.S.C. § 524(c) and (a)(2). Section 524 provides in relevant part:

Effect of discharge

(a) A discharge in a case under this title—

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a liability of the debtor, whether or not discharge of such debt is waived;

. . .

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable ... only if—

(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of nego-

---

**9.** The Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b)(2), enacted subsequent to the Ninth Circuit's decision in *In re GlenFed*, contains a heightened requirement of specificity for pleading scienter in securities fraud cases. Because this case does not involve securities fraud, *In re GlenFed's* analysis of Rule 9(b) remains persuasive authority in this case.

**10.** The Court reached its conclusion as to this issue before deciding plaintiff's motion to re-

fer. If the Bankruptcy Court were to decide this issue, the "losing" party would presumably appeal that decision to this Court. Thus, one way or another, this Court must decide whether § 524 contains an implied private right of action. To avoid duplicative litigation in the Bankruptcy Court, this Court's determination of this issue will control this litigation.

tiating an agreement under this subsection, which states that such agreement—

(A) represents a fully informed and voluntary agreement by the debtor; and

(B) does not impose an undue hardship on the debtor...

Under subsection (a)(2), a Bankruptcy Court's discharge order operates as an injunction against the collection of a prepetition debt. Subsection (c) establishes the mechanism by which a bankrupt debtor and a creditor may enter into an enforceable agreement to re-affirm a prepetition debt. Plaintiff alleges that Primus violated both of these subsections by attempting to recover alleged debts after the discharge of plaintiff's bankruptcy without following the required re-affirmation procedures. Complaint ¶¶ 63, 72. Primus argues that there is no private right of action under § 524 and that plaintiff may seek enforcement of its provisions only through an order of contempt. Reply at 4.

The Supreme Court has established a four part test for determining whether a court should imply a private cause of action for a statute:

(1) whether plaintiff is a member of a class for whose special benefit the statute was enacted; (2) whether there is any explicit or implicit indication of congressional intent to create or deny a private remedy; (3) whether a private remedy would be consistent with the underlying purpose of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law.

*Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). These factors are not given equal weight: "[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private right of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

The express language of § 524 does not reveal an intent on the part of Congress to create a private right of action

for its enforcement. However, as the *Cort* factors indicate, congressional intent "may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979).

The Ninth Circuit has yet to address the issue whether a private right of action may be implied for an alleged violation of § 524. Three California courts have considered the issue and reached different conclusions. *In re Costa*, 172 B.R. 954 (Bkrtcy.E.D.Cal.1994), found no private right of action based on its analysis under the second and third elements of the *Cort* test. For the third factor, the court found that a private right of action would be inconsistent with the remedies crafted by Congress:

The legislative scheme provides a permanent injunction for which the traditional and well-known remedy is contempt. If a nontraditional remedy was being prescribed, the Congress could and would have done so.

*Id.* at 966. The *Costa* court also took into account that in 1984 Congress created a private right of action in 11 U.S.C. § 362(h), which authorizes recovery of actual damages, costs and attorney's fees for willful violations of the automatic stay during bankruptcy mandated by § 362(a). Section 362 previously did not contain an explicit private right of action until Congress added subsection (h) in 1984. Significantly, Congress chose not to similarly amend § 524, as the *Costa* court noted:

It follows that legislation similar to section 362(h) would be necessary to create a private right of action for punitive damages for violation of the discharge injunction. Perhaps it would be a good idea to clone section 362(h) in section 524 but that is a question for the Congress, not the judiciary.

*Id.*

Another court, not in California, has employed a similar analysis in applying the *Cort* factors to § 524:

[T]he most important *Cort* factor of congressional intent does not indicate that § 524 should be construed to imply a private remedy. As the Court in *Costa* noted, it is helpful to contrast the legislative history of § 524 with § 362, which expressly authorizes a debtor to recover damages for willful violations of the automatic stay. In 1984 Congress enacted § 362(h) which allows individual debtors to recover actual and punitive damages for willful violations of § 362. Prior to 1984 § 362 did not afford a private remedy. Of central importance is the fact that Congress also amended § 524 in 1984 and failed to enact a similar provision.

Congressional intent could not be more clear. If Congress intended that there be a private right of action under § 524 it could have easily inserted a similar private remedy provision in § 524 at that time. Congress chose not to do that. When Congress wishes to provide a private damages remedy, it knows how to do so. Congress did just that when it amended § 362 in 1984. Thus, legislative history clearly indicates that Congress did not want to create a private right of action for a violation of § 524. The third *Cort* factor is also not satisfied in this case. The legislative scheme expressly provides for a discharge of the debtor's debt in the form of a permanent injunction. The common relief for violation of a discharge injunction under § 524(a)(2) is through the court's inherent contempt power.

*Bessette v. AVCO Financial Services, Inc.,* 240 B.R. 147, 155 (D.R.I.1999) (internal citations omitted).

Two federal courts in California have reached a conclusion opposite to *Costa* and *Bessette*—i.e., that there is a private right of action under § 524. In *Rogers v. NationsCredit Financial Services, Corp.,* 233 B.R. 98 (N.D.Cal.1999), the court concluded that a private right of action does exist for § 524. The court's decision rested on three factors. First, it found that Congress' failure to add a private right of action to § 524 in the 1984 amendments was not persuasive evidence of legislative intent:

As noted above, § 524 does not explicitly provide for an individual damages remedy as is provided in § 362(h). Some courts have interpreted this omission as indicating an implicit legislative intent to deny such a remedy. However, Congress added the private right of action for violation of § 362(h) in 1984, while § 524 was enacted much earlier, in 1978. Therefore, it seems tenuous at best to infer legislative intent from that omission.

*Id.* at 109. The *Rogers* Court also considered the policy behind § 524 as reflected in the House Report:

[U]nsuspecting debtors are led into binding reaffirmations, and the beneficial effects of a bankruptcy discharge are undone. The advantages sophisticated and experienced creditors have over unsophisticated debtors in this area . . . still remain. The unequal bargaining position of debtors and creditors, and the creditors' superior experience in bankruptcy matters still lead to reaffirmations too frequently. To the extent that reaffirmations are enforceable, the fresh start goal of the bankruptcy laws is impaired.

. . .

[This] bill will prevent the postbankruptcy harassment that frequently takes place now by prohibiting creditor attempts to collect a discharged debt. . . .Frequently a finance company takes a security interest in the debtor's household and personal goods. . . .A threat of repossession is a very effective tool in getting at the debtor to reaffirm for the full amount of the debt due, even though the market value of the goods involved is far below the amount of the debt. . . .

. . .

This provision is a significant factor in making bankruptcy relief an effective remedy. It ensures that a debtor will not come out of bankruptcy in the same situation as when he went in.

*Id. (quoting* H.R.Rep. No. 95–595, at 163, reprinted in 1978 U.S.C.C.A.N. 5963, 6124). Finally, the court relied on § 105(a) of the Bankruptcy Code in analyzing the scope of the courts' powers to enforce the Code: [11]

> Congress provided the courts with very broad authority to enforce the provisions of the Code ... Thus, Congress consciously imbued [sic] the courts with the authority to construct appropriate remedial measures of enforcement. Therefore, permitting a private right of action under § 524 is consistent with the legislative goals of Congress in enacting that provision ...

*Id.*

In *Malone v. Norwest Financial California, Inc.,* 245 B.R. 389 (E.D.Cal.2000), the plaintiffs sought "disgorgement of profits and punitive damages premised on the alleged improper solicitation of reaffirmation agreements and collection of pre-petition debt ..." *Id.* at 392. Although the *Malone* court did not provide a summary of the facts underlying that case, it would appear that the plaintiffs' claims in *Malone* were factually analogous to the claims alleged by plaintiff in this case. The issue in *Malone* was whether § 524 creates a private right of action and, if so, whether the plaintiffs had a right to a jury trial on their claim alleging a violation of § 524. The *Malone* court held that § 105(a) provides an "explicit cause of action under § 524," *id.* at 395, and, alternatively, that § 524 creates an implied private right of action. As to § 105, the *Malone* court reasoned that:

The plain language of 11 U.S.C. § 524 creates a right in bankrupts not to be bound by contracts to repay debt if they do not conform to the requirements of § 524(c). Moreover, by its plain terms, § 524(a) creates a substantive right in petitioners to be free from a broad array of collection tactics. Given the substantive rights provided under § 524, it follows that § 105 provides the court with the power to issue "any judgment ... appropriate to carry out" the provisions of the substantive section.

*Id.*[12] However, the court did not base its holding on this ground alone but went on to conclude that a private right of action also exists under § 524.

In reaching this determination, the court applied *Cort's* four factor analysis to § 524. Most importantly, the court determined that Congress did intend to create a private right of action under § 524(c)(2) because that subsection "provides for rescission" of the reaffirmation agreement and "nothing in the terms of the statute suggests that debtors are limited to defending on the basis of rescission rather than affirmatively seeking relief." *Id.* at 397. Thus, "[o]nce it is clear that the statute provides implied remedies, the issue becomes the extent of those implied remedies rather than their existence." *Id.*[13]

The case upon which the *Malone* court primarily relied for construing § 524 to contain a private right of action, *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) *("Transamerica "),* does indeed sup-

---

**11.** Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

**12.** This Court disagrees. Section 105 "is not to be used for the purpose of creating private remedies that are not expressly or impliedly created in other provisions of Title 11." *Bessette,* 240 B.R. at 156. "[S]ection 105 does not 'authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.' " 2 Collier

on Bankruptcy § 105.01[2] (15th ed.1999) *(quoting United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986)). Thus, although § 105 provides a basis for holding a party in contempt for a violation of the discharge injunction, it does not create a private right of action under § 524.

**13.** The court also found that the legislative history revealed Congress' intent in enacting § 524 to provide debtors with "broad protection from improper reaffirmation agreements." *Id.* at 398.

port its conclusion. In *Transamerica*, the issue was whether an implied private right of action exists under § 215 of the Investment Advisors Act of 1940, which provides that contracts whose formation or performance violate the Act "shall be void." 15 U.S.C. § 80b–15. The Supreme Court found that it did:

> In the case of § 215, we conclude that the statutory language itself fairly implies a right to specific and limited relief in a federal court. By declaring certain contracts void, § 215 by its terms necessarily contemplates that the issue of voidness under its criteria may be litigated somewhere. At the very least Congress must have assumed that § 215 could be raised defensively in private litigation to preclude the enforcement of an investment advisers contract. But the legal consequences of voidness are typically not so limited. A person with the power to void a contract ordinarily may resort to a court to have the contract rescinded and to obtain restitution of consideration paid ... we conclude that when Congress declared in § 215 that certain contracts are void, it intended that the customary legal incidents of voidness would follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution. Accordingly, we hold that the Court of Appeals was correct in ruling that the respondent may maintain an action on behalf of the Trust seeking to void the investment advisers contract.

*Transamerica*, 444 U.S. at 18–19, 100 S.Ct. at 246–247 (internal citations omitted).[14]

At the hearing on this motion, defendant attempted to distinguish *Malone* on the grounds that the parties in that case executed a reaffirmation agreement (although not necessarily an enforceable one).[15] In this case, however, plaintiff alleges that Primus never sought to obtain her consent to a reaffirmation agreement. Complaint ¶ 12. Under defendant's interpretation of *Malone*, a debtor who executes a reaffirmation agreement has a private cause of action for rescission and restitution while a debtor who is merely harassed by a creditor into paying a discharged debt has no private right of action and must instead seek relief through an order finding the debtor in contempt. This result is both anomalous and contrary to public policy. If debtors who are unlawfully coerced or induced into paying discharged debts, most likely without obtaining legal advice, could not seek relief directly from the creditor, whereas those who entered into reaffirmation agreements could seek relief, a creditor would have no incentive to seek a reaffirmation agreement. Surely this is not the result that Congress intended in drafting § 524. Creditors should be encouraged to enter into reaffirmation agreements that comply with the requirements of § 524(c) and the elimination of any distinction between debtors who entered into such agreements and debtors who did not will further this goal.

This Court agrees with and adopts the reasoning of the *Malone* court's holding that § 524 carries with it an implied private right of action.[16] The Court also concludes that a plaintiff may pursue a claim under § 524 for restitution even where

---

**14.** The fact that Congress amended both § 362 and § 524 in 1984 but chose only to add an express private right of action to § 362 is relevant evidence of its intent not to create such a private right for § 524. However, this evidence is insufficient to overcome the evidence of congressional intent that can be gleaned from the statutory language itself. *See Connecticut National Bank v. Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (statute's language is critical element of statutory construction).

**15.** Although *Malone* can be read to suggest that there was a reaffirmation agreement between the parties in that case, this is far from clear. In any event, this Court understands *Malone's* reasoning to apply with equal force to the situation where a creditor somehow induces a debtor to pay a discharged debt even in the absence of a reaffirmation agreement.

**16.** The Court disagrees, however, with plaintiff's assertion (at the hearing) that *Malone* found an implied right of action under both

there is no reaffirmation agreement to rescind. Accordingly, defendant's motion to dismiss plaintiff's first and third claims under § 524 is denied.

### D. FDCPA claim

Primus asserts that plaintiff fails to state a claim under the FDCPA because 1) plaintiff's exclusive remedy is under the Bankruptcy Code, 2) Primus is not a "debt collector" as defined by the FDCPA and 3) plaintiff's admission that there was no "debt" within the definition of the statute renders the FDCPA inapplicable.

#### 1. Exclusivity of remedy

■ Defendant cites *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910 (9th Cir.1996), and *Baldwin v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC*, 1999 WL 284788 (N.D.Ill. April 26, 1999), in arguing that the Bankruptcy Code provides the exclusive remedy for plaintiff's claims. In *MSR Exploration*, the plaintiffs had been the debtors in a Chapter 11 bankruptcy proceeding. They sued certain parties who had asserted creditor's claims in the bankruptcy proceeding, alleging that the defendants had engaged in malicious prosecution in asserting those claims. The Ninth Circuit held that an action based on state common law and claiming malicious prosecution for events taking place during Bankruptcy Court proceedings is preempted by the Bankruptcy Code, that the claim would be a federal claim and that it would have to be brought in Bankruptcy Court. The Court's analysis was based on the Supremacy Clause of the United States Constitution, art. VI, cl. 2., and in no way implied that the Bankruptcy Code also prevents an individual from asserting federal statutory claims arising out of bankruptcy-related events.

In *Baldwin* the plaintiff was a debtor in a Chapter 13 bankruptcy proceeding. The defendant was a law firm whose principal practice involved the collection of debts. One of the plaintiff's debts was a residential mortgage. The defendant filed a "proof of claim" in the Chapter 13 proceeding based on the mortgage. Plaintiff then brought suit against the defendant alleging that the filing of the proof of claim violated the FDCPA. The district court granted the defendant's motion to dismiss, holding that to allow a debtor to assert an FDCPA claim based upon a debt collector's filing of proofs of claim in a bankruptcy proceeding would be incompatible with the purpose of the Bankruptcy Code. *Id.* at *4.

The district court's holding was based on *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), where the Supreme Court found that the wage garnishment limitation provisions of the FDCPA do not limit a bankruptcy trustee's authority to treat a bankrupt debtor's income tax refund as property of the debtor's estate. *Id.* at 650–652, 94 S.Ct. 2431. In so holding, the Court focused on the fact that Congress' concern in enacting the Consumer Credit Protection Act (which contains the FDCPA provisions) "was not the administration of a bankrupt's estate but the prevention of bankruptcy in the first place." *Id.* at 650, 94 S.Ct. 2431.

*Baldwin* found that "the holding and reasoning of *Kokoszka* impel a finding that an FDCPA claim may not be premised on proofs of claim filed as part of a bankruptcy proceeding." *Baldwin*, 1999 WL 284788 at *4. However, both *Baldwin* and *Kokoszka* are readily distinguishable from this case. The critical difference is that those cases involved allegations of misconduct during the bankruptcy proceedings themselves. Therefore, allowing a bankrupt debtor to assert an FDCPA claim could potentially undermine the Bankruptcy Code's specific provisions for administration of the debtor's estate. Here, in contrast, plaintiff's FDCPA claim is premised solely on Primus' alleged debt collection activities outside of and in disregard of the bankruptcy proceeding. Complaint ¶¶ 104–106. Moreover, plaintiff has been discharged from her bankruptcy, so there is no danger that allowing her to bring a

subsections (a) and (c) of § 524. *Malone's* analysis was limited solely to § 524(c).

claim under the FDCPA would interfere with the administration of her bankruptcy. Inasmuch as the FDCPA's purpose is to prevent bankruptcy, a debtor who has been discharged is still in need of and entitled to that Act's protection. For these reasons, the Court does not find the authorities cited by defendant persuasive.[17] The Bankruptcy Code does not preempt plaintiff's FDCPA claim.

## 2. Definition of Debt Collector

■ Plaintiff's FDCPA claim alleges that "Defendant is a corporation actively engaged in lending monies and collecting debts on a nationwide scale," and that "Defendant is a debt collector within the meaning of the Fair Debt Collection Practices Act." Complaint ¶¶ 102–103. Primus asserts that this pleading does not adequately address whether Primus is a debt collector.

The FDCPA is designed to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). A debt collector is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6). The statutory definition of a debt collector contains several exceptions and Primus contends that three of those exceptions apply to its business activities. Specifically, Primus asserts that (1) it was collecting a debt on its own behalf (the "creditor" exception); (2) even if it was collecting debts on behalf of Ford, it was affiliated with Ford (the "affiliate" exception); and (3) the debt was not in default at the time Primus began its collection activities on behalf of Ford (the "servicer" exception).

Any one of these exceptions, argues Primus, renders the FDCPA inapplicable in this case.

On a motion to dismiss pursuant to Rule 12(b)(6), the allegations of the complaint must be accepted as true. *Wyler*, 135 F.3d at 661, and the defendant must show beyond doubt that plaintiff can prove no set of facts that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Here, plaintiff alleges that Primus "is in the business of … collecting monies." Complaint ¶ 18. Because this allegation must be accepted as true, plaintiff's subsequent assertion that Primus is a debt collector within the meaning of the FDCPA is not merely a conclusory legal allegation. Plaintiff need not plead the inapplicability of every exception to this definition. Because it is possible that plaintiff will prove that Primus is in fact a debt collector, dismissal on this ground is unwarranted.

## 3. Existence of a Debt

■ Plaintiff's FDCPA theory, as reflected in her complaint, is that Primus unlawfully attempted to collect debts allegedly owed by plaintiff after the discharge. Complaint ¶ 104. In her opposition to defendant's motion, plaintiff further explains her theory that Primus attempted to collect on a nonexistent obligation: "Upon filing of a bankruptcy, there is no longer an 'obligation … to pay money.' Therefore upon the filing of the bankruptcy there is no longer a 'debt' as it is defined by the FDCPA." Opposition at 14. Defendant seizes on this statement, arguing that if there was no debt under the FDCPA then it was impossible for defendant to violate a statute outlawing unfair debt collection activities. Reply at 9. This hyperbolic exegesis of plaintiff's contentions is preposterous.[18] The FDCPA de-

---

17. Defendant asserts that the Bankruptcy Code also preempts plaintiff's RICO claim. That contention is rejected for the same reasons given above.

18. Suppose a Christian employer fires an employee because he thought the employee was a Buddhist. In fact the employee was a Christian. The employee sues, claiming religious discrimination. May the employer have the suit dismissed because in fact the employee was a Christian?

fines a debt as "any obligation *or alleged obligation* of a consumer to pay money arising out of a transaction ..." 15 U.S.C. § 1692a(5) (emphasis added). In a Rule 12(b)(6) motion, any ambiguity in the documents must be resolved in plaintiff's favor. *International Audiotext Network, Inc. v. AT & T Co.*, 62 F.3d 69, 72 (2d Cir.1995). An alleged obligation falls within the FDCPA's definition of a debt, and plaintiff has not implicitly or explicitly conceded that the FDCPA is inapplicable here.

## E. RICO Claim

■ Count five of plaintiff's complaint alleges that Primus' attempts to collect payments for the discharged lease obligation constitute a violation of RICO, 18 U.S.C. § 1962(c). That subsection provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Primus asserts that plaintiff's RICO claim is defective because plaintiff does not plead the existence of a proper enterprise.

■ It is settled that "[f]or the purposes of section 1962(c), RICO plaintiffs must allege a defendant—the 'person' or 'persons'—who is distinct from the 'enterprise' whose business the defendant is conducting." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1533 (9th Cir.1992) (finding requirement satisfied where plaintiff alleged that corporation was enterprise and individual officers and employees were the "persons"). The reason for this "distinctness" requirement is that "logic alone dictates that one entity may not serve [both] as the enterprise and the person associated with it because ... 'you cannot associate with yourself.'" *Yellow Bus Lines, Inc. v. Local Union 639*, 883 F.2d 132, 139 (D.C.Cir.1989) (*quoting McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir.1985)).

Plaintiff's complaint alleges that Primus is the "person" under § 1962(c) but fails to indicate who or what constitutes the enterprise. Complaint ¶ 84. This omission, standing alone, is adequate grounds for dismissal.

Because this defect may be cured, the Court grants plaintiff leave to amend. However, in determining whether to amend, plaintiff shall pay careful heed to the arguments raised in defendant's motion to dismiss, which appear to have merit. Specifically, plaintiff shall examine *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir.1997) and *Brannon v. Boatmen's First National Bank of Oklahoma*, 153 F.3d 1144 (10th Cir.1998), to determine whether she can in good faith allege the necessary elements of a RICO enterprise. Plaintiff shall also reconsider her contention that Primus and Ford are related only by contract in light of Primus' Certification as to Interested Parties filed on October 14, 1999. If Primus is in fact a wholly-owned subsidiary of Ford, plaintiff will face additional hurdles in prosecuting a RICO claim. *See Brannon, supra.*

## F. Remaining claims

In Count VII, plaintiff seeks declaratory relief "relating to judgments rendered against [plaintiff and class members] in favor of Defendant relating to discharged debt." Complaint ¶ 108. However, plaintiff does not allege that judgment was entered against her in favor of Primus. Primus is thus correct that there is no claim or controversy between the parties as to this issue. This claim is also dismissed without prejudice.

Because it is possible that plaintiff will prove that she gave notice of her bankruptcy to Primus, the Court will not dismiss plaintiff's claims for injunctive relief (Count VIII) and an accounting (Count IX).

## CONCLUSION

For the foregoing reasons, and good cause appearing therefor, the Court ORDERS as follows:

1. Plaintiff's motion for referral to the United States Bankruptcy Court is GRANTED;

2. Defendant's motion to dismiss is:

a. DENIED as to counts one and three alleging violations of 11 U.S.C. § 524;

b. GRANTED without prejudice as to counts five (RICO claim) and seven (declaratory relief);  and

c. DENIED as to counts two, four, six, eight, nine and ten.

IT IS SO ORDERED.